1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CALVIN K. TICESON,

        Plaintiff,

    v.

JOSEPH LEHMAN,

        Defendant.

Case No. C05-5007RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**APRIL 14TH, 2006**

      This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B).  Plaintiff contends he had a liberty interest in release on his earned early release date and was entitled to due process prior to a decision not to release him. Before the court is defendants' motion for summary judgement.  (Dkt. # 16).  Plaintiff has not responded.  Under Local Rule 7 (b)(2) failure to file papers in opposition to a motion may be deemed by the court as an admission the motion has merit.

      The named defendants are Joseph Lehman, former Secretary of the Department of Corrections, Victoria Roberts, Chair of the End of Sentence Review Committee, and Kimberly Acker, Civil Commitment Program Manager.  (Dkt. # 8).

REPORT AND RECOMMENDATION 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>FACTS</u>

Plaintiff has not contradicted defendants facts which are adopted as follows:

Calvin Ticeson was previously in the custody of the Washington State DOC pursuant to a guilty plea of unlawful imprisonment and felony harassment on November 17, 1998. Exhibit 1, Declaration of Virginia Shamberg, Attachment A, Judgment and Sentence, <u>State v. Ticeson</u>, King County Superior Court Cause No. 98-1-03617-2-SEA. A special verdict/finding was rendered that the defendant committed the crime(s) with a sexual motivation for the unlawful imprisonment. <u>Id</u>. As a result of his conviction, Mr. Ticeson received a sentence of 60 months and 29 months confinement. The trial court also imposed a community custody requirement for the maximum time period allowed by law. <u>Id</u>. at 3.

In 1998, the year in which Mr. Ticeson was sentenced by the King County Superior Court to his term of community placement, a standard condition of community placement included the requirement that the residence location and living arrangements of Mr. Ticeson as a sex offender would be subject to the prior approval of the DOC during the period of community placement in his case.

Mr. Ticeson's ERD was November 16, 2001. Exhibit 2, Declaration of Cherrie S. Kollmer, Attachment A, Legal Face Sheet. Mr Ticeson sentence expired April 3, 2003. Id. Mr. Ticeson was released from DOC custody on April 3, 2003. <u>Id</u>.; <u>see</u> <u>also</u> Exhibit 3, Declaration of Stefanie J. Weigand, Attachment A, Deposition Transcript of Calvin Ticeson Page 10 Line 10. Mr. Ticeson was released to the King County Sheriff after being served with paperwork showing probable cause that he was a sexually violent predator. Dep. Transcript 10: 23-25. Mr. Ticeson is currently a resident at the Special Commitment Center, a Department of Social and Health Services facility on McNeil Island. Dep. Transcript 5: 14-16.

Inmates who have a community custody requirement in their judgment and sentence and are required by law or their judgment and sentence to have a release plan approved by DOC, may be released to community custody on or after their ERD only if their release plan is approved by DOC and the statutory notification requirements for the release of such offenders are satisfied. Exhibit 4, Declaration of Kit Bail at ¶ 9. Under DOC policy 350.200, an inmate's transition into the community on community custody status is premised on the inmate submitting a proposed release plan, including a proposed release address, which does not violate the conditions of the inmate's judgment and sentence, does not place the inmate at risk to re-offend, and does not present a risk to victim safety or community safety. <u>Id</u>. at ¶ 11. <u>See also</u> Exhibit 4, Attachment A, DOC Policy 350.200.

The process for an inmate to secure DOC approval of a release plan in order to be released to community custody is contained in DOC Policy 350.200. Id. at ¶ 10. DOC policy 350.200 is available to all inmates. Exhibit 4, Attachment A. The policy reads in part: "Staff shall not complete or forward a TP [transition plan] for investigation if the ESRC has determined that the offender meets the criteria for referral as a sexually violent predator under RCW 71.09." Exhibit 4, Attachment A, at 8. This portion of the policy was promptly changed after the Washington State <u>Dutcher</u> decision with a memo entitled <u>Dutcher</u> Decision. Exhibit 4, Attachment B, <u>Dutcher</u> Decision Memo dated February 13, 2003.

Proposed release plans for possible transfer to community custody status for sex

offenders are investigated by a Classification Counselor or Community Corrections Officer (CCO) to determine if the plan is viable. Exhibit 5, Declaration of Kimberly Acker at ¶ 7. Minimum requirements include: an actual location of a physical address, not a contact address or post office box; the occupant/owner of the property is knowingly allowing the sex offender to reside there; the sex offender intends to physically reside in the residence; and the placement does not put the offender in violation of his/her conditions of release. Id. The proposed sponsor shall be informed of the offender's criminal history, sex offender notification level and community notification, and conditions of release. Id. The Classification Counselor or CCO will investigate. Id. A release plan will be denied if the classification Counselor or CCO determines that the plan will place the offender in circumstances where there is a likely risk to reoffend. Id. The CCO will assess the degree of risk for victims and potential victims of similar age or circumstances when investigating the proposed release plans for sex offenders. Id. See also Exhibit 4, Attachment A, at 10-11; Exhibit 4, Attachment B.

DOC staff investigate the inmate's release plan by visiting the proposed residence and by interviewing the person or persons with whom the inmate proposes to reside. Exhibit 4, ¶ 12. The investigating DOC staff then decide whether to approve or deny the inmate's release plan and communicate that decision to the inmate's counselor. Id.

If an inmate's release plan is denied, inmates are advised of DOC's decisions regarding release plans. Id. at ¶ 13. The inmate may then submit a new or revised plan for DOC's review. Id. at ¶ 14. If the inmate is ultimately unable to locate a viable release address or all of the inmate's proposed plans for possible transfer to community custody status are denied, he/she shall be released on the date his/her maximum sentence is reached. Id. Counselors continue working with inmates up to their maximum release date encouraging inmates to find the best possible place for them to go, even though once inmates have reached their maximum release date, they must be released from DOC custody without regard to their plan. Id.

According to the Plaintiff's deposition testimony, he submitted a release plan to his brother's house, which was denied. Dep. Transcript 15: lines 7-20. Plaintiff also states that he submitted a release plan to his mother's home, which was denied. Dep. Transcript 17: 6-25. On or about June 6, 2001 Risk Management Specialist Beverly Farris met with Mr. Ticeson and his Counselor, Joe Gillis, for a risk management meeting. Exhibit 6, Declaration of Beverly Farris at ¶3. Counselor Gillis discussed his contact with Mr. Ticeson's mother, Betty Glover, who indicated that she would provide some assistance when it came to release planning, but was limited as to what she could do. Ms. Farris recalls that Ms. Glover indicated she did not want Mr. Ticeson to come live with her. Id. See also Exhibit 7, Declaration of Sue Lay, Attachment A, May 7, 2001 chrono entry by J. Gillis; Exhibit 7, Attachment B, June 6, 2001 chrono by J. Gillis. Those were the only two plans the Plaintiff submitted. Dep. Transcript 18: 1-15. See also Exhibit 7, Attachment C, August 30, 2002 chrono entry by R. Jackson.

(Dkt. # 16, pages 2 to 5).

Washington State's complex sentencing system allows some inmates to

earn time off their sentence by programing and good behavior while incarcerated.  Other inmates, like

Mr. Ticeson, may not earn time off their sentences but instead may become eligible for placement in a

community under supervision in lieu of earning good time or earned time.

REPORT AND RECOMMENDATION 3

1    RCW 9.94A.728 (2) provides:

2    No person serving a sentence imposed pursuant to this chapter and committed to the
     custody of the department shall leave the confines of the correctional facility or be
3    released prior to the expiration of the sentence except as follows:
     ...
4
5    (2)(a) A person convicted of a sex offense or an offense categorized as a serious violent
     offense, assault in the second degree, vehicular homicide, vehicular assault, assault of a
6    child in the second degree, any crime against persons where it is determined in
     accordance with RCW 9.94A.602 that the offender or an accomplice was armed with a
7    deadly weapon at the time of commission, or any felony offense under chapter 69.50 or
     69.52 RCW, committed before July 1, 2000, may become eligible, in accordance with a
8    program developed by the department, for transfer to community custody status in lieu of
     earned release time pursuant to subsection (1) of this section;

9    (b) A person convicted of a sex offense, a violent offense, any crime against persons
     under RCW 9.94A.411(2), or a felony offense under chapter 69.50 or 69.52 RCW,
10   committed on or after July 1, 2000, may become eligible, in accordance with a program
     developed by the department, for transfer to community custody status in lieu of earned
11   release time pursuant to subsection (1) of this section;

12   (c) The department shall, as a part of its program for release to the community in lieu of
     earned release, require the offender to propose a release plan that includes an approved
13   residence and living arrangement. All offenders with community placement or
     community custody terms eligible for release to community custody status in lieu of
14   earned release shall provide an approved residence and living arrangement prior to
     release to the community;
15
     (d) The department may deny transfer to community custody status in lieu of earned
16   release time pursuant to subsection (1) of this section if the department determines an
     offender's release plan, including proposed residence location and living arrangements,
17   may violate the conditions of the sentence or conditions of supervision, place the
     offender at risk to violate the conditions of the sentence, place the offender at risk to
18   reoffend, or present a risk to victim safety or community safety. The department's
     authority under this section is independent of any court-ordered condition of sentence or
19   statutory provision regarding conditions for community custody or community
     placement;
20
     When an inmate is first transferred to the Department of Corrections, staff at the Department
21
     calculate at least three possible release dates for the inmate.  The first of these dates is the maximum
22
     release date.  A maximum release date is the date an inmate will be released because they have served the
23
     entire sentence imposed.  The second date is an earned early release date, ERD.  This is the date an
24
     inmate may be released if they earn all available sentence reductions and do not lose earned time for
25
     misbehavior.  Release on this date is not automatic for all inmates.  The third date the department
26
     calculates is an adjusted release date.  This is the projected date when an inmate may be eligible for
27

28   REPORT AND RECOMMENDATION 4

1   release if they lose no further good time or earned time.  This date along with the earned early release

2   date changes when an inmate does not earn or loses a possible reduction in their sentence.  By statute an

3   inmate cannot receive earned early release credits before they have been earned.  "The correctional

4   agency shall not credit the offender with earned release credits in advance of the offender actually

5   earning the credits."  See, RCW 9.94A.728 (1).

6          Certain classes of inmates have periods of supervision at the end of their incarceration.  These

7   inmates are not allowed to earn earned early release because of the nature of their crime.  These inmates

8   receive supervision by way of community placement or community custody "in lieu of" earned early

9   release.  Plaintiff is a person whose Judgment and Sentence included community placement or

10  community custody following release.  Defendants contends plaintiff was not entitled to general release

11  on his earned early release date.  Plaintiff has not come forward with any evidence to contradict this

12  assertion.  Thus, this action deals with an inmate who reached his earned early release date and was not

13  released on that date because  community custody or community placement was imposed in the

14  Judgment and Sentence.

15                                         DISCUSSION

16        A.        The standard of review.

17         Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

18  depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

19  there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

20  law."  Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the

21  nonmoving party fails to make a sufficient showing on an essential element of a claim on which the

22  nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

23         There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

24  rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

25  475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not

26  simply "some metaphysical doubt.").  See also Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute

27  over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring

28  REPORT AND RECOMMENDATION 5

1  a judge or jury to resolve the differing versions of the truth.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

2  242, 253 (1986); <u>T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association</u>, 809 F.2d 626,

3  630 (9th Cir. 1987).

4       The determination of the existence of a material fact is often a close question.  The court must

5  consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the

6  preponderance of the evidence in most civil cases.  <u>Anderson</u>, 477 U.S. at 254; <u>T.W. Elec. Service Inc.</u>,

7  809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving

8  party only when the facts specifically attested by the party contradicts facts specifically attested by the

9  moving party. <u>Id</u>.

10      The nonmoving party may not merely state that it will discredit the moving party's evidence at

11  trial, in hopes that evidence can be developed at trial to support the claim.  <u>T.W. Elec. Service Inc.</u>, 809

12  F.2d at 630.(relying on <u>Anderson</u>, *supra*).  Conclusory, nonspecific statements in affidavits are not

13  sufficient, and "missing facts" will not be "presumed."   <u>Lujan v. National Wildlife Federation</u>, 497 U.S.

14  871, 888-89 (1990).

15      B.    <u>Analysis</u>.

16      The court begins by noting that an inmate has no constitutional right to release before expiration

17  of the sentence.  <u>Greenholtz v. Inmates of Nebraska</u>, 442 U.S. 1 (1979).  Nor have the Washington state

18  appellate courts recognized an independent state created interest in amassing early release credits.  <u>In Re</u>

19  <u>Galvez</u>, 79 Wash. App. 655 (1995).  This does not end the court's analysis because in this case the court

20  is not concerned with the granting or denial of earned early release time.  Under the facts of this case the

21  plaintiff had been granted the credits or time off his sentence and was eligible for release, subject to the

22  approval of the release plan by the Department of Corrections and whatever public notification may be

23  mandated by state law.  The court must consider whether the Due Process Clause of the 14th Amendment

24  requires a hearing prior to denial of a release plan.

25      The court cannot overemphasize that the interest at issue in this case must be a state created

26  liberty interest and is not an interest found under the 14th Amendment Due Process Clause itself.

27  Normally the court would first determine whether there is in fact a state created liberty interest.  The

28  REPORT AND RECOMMENDATION 6

1   Washington State Court of Appeals found there to be a "limited liberty interest" in Crowder, but the

2   court did not define what a "limited liberty interest" is and approved post depravation remedies which

3   only included the Department helping Mr. Crowder to formulate a plan.  In Re Crowder, 97 Wash App.

4   598 (1999).  No hearing of any type was ordered.

5        In Dutcher the same court emphasized it was operating under the State Rule of Appellate

6   Procedure 16.4 which did not require a finding of a constitutional violation and only required a finding

7   of unlawful restraint under state law.  Dutcher 114 Wash. App. at FN 3 and 4; Citing In Re Cashaw, 123

8   Wash. 2d 138 (1994).  Cashaw specifically rejected the contention that procedural rules which are not

9   outcome determinative create a liberty interest protected by due process. In Re Cashaw, 123 Wn 2d. at

10  146.  In Cashaw the Washington State Supreme Court required the Indeterminate Sentence Review

11  Board to follow its own rules and granted relief using the State Rule of Appellate Procedure 16.4.  This

12  grant of relief was not based on a  finding of any constitutional violation.

13       The Washington State Supreme Court in Cashaw was careful to grant relief only on state

14  grounds.  Indeed, the State Supreme Court in Cashaw analyzed what is needed to find a state created

15  liberty interest and found no due process violation in that case.  The State Supreme Court's analysis in

16  Cashaw is instructive regarding what constitutes a liberty interest and when such interests rise to the level

17  of a state created liberty interest protected by the Due Process Clause of the United States Constitution.

18  This court adopts the analysis set forth by the Washington State Supreme Court.  The court stated:

19            Liberty interests may arise from either of two sources, the due process clause and
          state laws. Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675
20        (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1089 (9th Cir.1986), cert. denied, 481
          U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The due process clause of the federal
21        constitution does not, of its own force, create a liberty interest under the facts of this case
          for it is well settled that an inmate does not have a liberty interest in being released prior
22        to serving the full maximum sentence. Greenholtz v. Inmates of Nebraska Penal &
          Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979);
23        Ayers, 105 Wash.2d at 164-66, 713 P.2d 88; Powell, 117 Wash.2d at 202-03, 814 P.2d
          635.
24
25            However, as indicated above, state statutes or regulations can create due process
          liberty interests where none would have otherwise existed. See Hewitt, 459 U.S. at 469,
26        103 S.Ct. at 870; Toussaint, 801 F.2d at 1089; Powell, 117 Wash.2d at 202-03, 814 P.2d
          635. By enacting a law that places substantive limits on official decisionmaking, the State
27        can create an expectation that the law will be followed, and this expectation can rise to
          the level of a protected liberty interest. See Toussaint, 801 F.2d at 1094.

28  REPORT AND RECOMMENDATION 7

For a state law to create a liberty interest, it must contain "substantive predicates" to the exercise of discretion and "**specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow**". Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989); Swenson v. Trickey, 995 F.2d 132, 134 (8th Cir.), cert. denied, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 468 (1993). **Thus, laws that dictate particular decisions given particular facts can create liberty interests, but laws granting a significant degree of discretion cannot.**

In Re Cashaw, 123 Wn 2d at 144 (emphasis added).

The Department has been mandated by statute to implement a system that allows for the possibility of early release. For some persons the release is automatic when they reach their earned early release date because they have no supervision following incarceration. Inmates like Mr. Ticeson, facing community placement or community custody, can earn a potential reduction in sentence and be placed on community placement or community custody at the discretion of the Department of Corrections.

The parties may disagree whether the discretion of the Department is unfettered or restricted with regards to what the department may consider but such argument misses the point. RCW 9.94A.728(2)(d) grants the Department the ability and the discretion to deny a release plan for any person who would receive community custody if the Department determines the plan may violate conditions of a sentence or supervision, may place the offender at risk to reoffend, or presents a risk to victim or community safety. Thus, whatever limits have been placed on the Department are not outcome determinative and there is no state created liberty interest. The Department still has a significant degree of discretion in granting or denying release to community placement or community custody. As the statute itself notes "[t]he department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement." RCW 9.94A.728 (2)(d).

A careful reading of the Washington State Court of Appeals holding in Dutcher shows the court was acting pursuant to state Rule of Appellate Procedure 16.4 and was using the lesser standard of review which did not require a finding of a constitutional violation. The ruling in Dutcher that the Department must follow the state statutory system and consider plans on the merits does not equate to a finding of a state created liberty interest in release and the holding in Dutcher did not eliminate the

REPORT AND RECOMMENDATION 8

1   Departments discretion.

2           There has been a progression in the State Court of Appeals decisions in which their terminology

3   and reasoning was expanding.  In <u>Crowder</u> the court found only a "limited liberty interest."  <u>In Re</u>

4   <u>Crowder</u>, 97 Wash. App. 598 (1999).  In <u>Dutcher</u>, the court used the reasoning of <u>Cashaw</u> to grant relief

5   solely on state grounds but inaccurately stated the interest was a "limited but protected liberty interest."

6   <u>Dutcher</u>, 114 Wash. App. at 758.  Now, in a more recent case, the same court is citing <u>Cashaw</u> and

7   <u>Dutcher</u> for the proposition that there is a limited liberty interest protected by due process.  <u>In Re Liptrap</u>,

8   127 Wash. App. 463, 469  (2005).  To the extent that <u>Liptrap</u>, finds a state created liberty interest in

9   release credits for persons subject to community custody the cases cited do not support the proposition

10  and the court declines to follow this decision.  A potential for release based on the Department exercising

11  its discretion does not equate to an absolute interest in release that a person with earned time and no post

12  release supervision enjoys.

13          As noted above neither <u>Crowder</u> nor <u>Dutcher</u> found a state created liberty interest.  Under the

14  analysis set forth in <u>Cashaw</u> there is no federally protected interest in this case.  The holding of <u>Dutcher</u>

15  is that an agency follow its own rules and statutes.  While in some cases that may become outcome

16  determinative and raise to the level of a state created liberty interest it is not outcome determinative in

17  this case because of the amount of discretion left with the Department.

18          There is not a state created liberty interest at stake in this case.  The statutes creating the potential

19  of community custody do not set forth any mandate that the Department hold hearings and only mandate

20  the Department consider properly submitted release plans for persons who have reached their possible

21  earned early release date subject to community custody or community placement after release.  Here

22  plaintiff submitted two plans and both were denied.  Accordingly the defendant's motion for summary

23  judgment should be **GRANTED.**

24                                    <u>CONCLUSION</u>

25          For the reasons stated above the court should **GRANT** defendant's motion for Summary

26  Judgment.  A proposed order accompanies this Report and Recommendation.

27          Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

28  REPORT AND RECOMMENDATION 9

parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 14th, 2006**, as noted in the caption.

DATED this 17th day of March, 2006.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION 10